UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FARAH AHMED,

        *Plaintiff*,

  v.

ANTONY J. BLINKEN, *et al.*,

        *Defendants*.

Civil Action No. 24-153 (LLA)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Farah Ahmed, a citizen of Pakistan, seeks to compel Defendants—Antony J. Blinken, in his official capacity as Secretary of State, and Andrew Schofer, in his official capacity as Deputy Chief of Mission to the U.S. Embassy in Pakistan—to adjudicate her nonimmigrant visa application. ECF No. 1. Ms. Ahmed contends that her B1/B2 Visitor Visa application has been unreasonably delayed in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361. ECF No. 1 ¶¶ 21-37. Defendants have moved to dismiss Ms. Ahmed's claim under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). ECF No. 5. For the reasons explained below, the court will deny Defendants' motion to dismiss.

**I.     BACKGROUND**

The court draws the facts, accepted as true, from Ms. Ahmed's complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). It further takes judicial notice of "information posted on official public websites of government agencies." *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, allows individuals who have "a residence in a foreign country which [they have] no intention of abandoning" to enter the United States "for business or temporarily for pleasure" through the B1/B2 visa program. 8 U.S.C. § 1101(a)(15)(B).  To obtain a B1/B2 visa, the foreign national must complete several steps.  *See* U.S. Dep't of State, *Visitor Visa*.[1]  First, the applicant must electronically submit a Form DS-160 to the consular office corresponding to the jurisdiction in which she resides. 22 C.F.R. §§ 41.101(a), 41.103(a).  Typically, an applicant for a nonimmigrant visa must then appear for an in-person interview with a consular officer.  *Id.* § 41.102.  At the conclusion of the interview, "the consular officer must [either] issue [or] refuse the visa." *Id.* § 41.121(a).  If the consular officer determines that he does not have sufficient information to establish visa eligibility, he may "refuse" the visa pending further administrative processing pursuant to Section 221(g) of the INA, which typically consists of additional information gathering.  U.S. Dep't. of State, *Administrative Processing Information*;[2] *see* 8 U.S.C § 1201(g); *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022).

In April 2019, Ms. Ahmed filed a DS-160 Application for Nonimmigrant Visa.  ECF No. 1 ¶ 4.  She sought a B1/B2 visa to visit family members who reside in the United States.  *Id.* ¶¶ 4, 25. The next month, Ms. Ahmed was interviewed at the U.S. Embassy in Islamabad, Pakistan, and at the conclusion of the interview, her visa was refused under Section 221(g) "for the purpose of administrative processing."  ECF No. 1 ¶¶ 5, 26; 8 U.S.C § 1201(g).  Ms. Ahmed promptly responded to a request for additional information, but "her application has been in administrative processing since that time."  ECF No. 1 ¶ 5.  Ms. Ahmed has inquired numerous times about the

---

[1] *Available at* https://perma.cc/L37P-XDPJ.

[2] *Available at* https://perma.cc/44NK-RVZE.

status of her application, but, each time, she has received boilerplate responses from the U.S. Embassy that her application "is undergoing routine but required administrative processing" and that she will be notified when the processing is complete.  ECF No. 7, at 2.

The delay in the adjudication of Ms. Ahmed's visa since May 2019 has "caused [Ms. Ahmed] severe distress and emotional harm" by preventing her from visiting her daughter, son-in-law, and grandchildren in the United States.  ECF No. 1 ¶¶ 25, 29.  The delay is especially frustrating because Ms. Ahmed has previously been issued a visa to enter the United States and because her husband, Muhammad Ahmed, has been issued three visas, "including a B1/B2 visa that was filed concurrently with [Ms. Ahmed]'s [2019] visa application," and has traveled to the United States without issue.  *Id.* ¶¶ 3, 30; *see* ECF No. 7, at 1.

In January 2024, Ms. Ahmed filed a complaint seeking to compel the adjudication of her visa application.  ECF No. 1 ¶¶ 39-42.  Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 5.  The matter is fully briefed.  ECF Nos. 5, 7, 8.

## II.     LEGAL STANDARD

Ms. Ahmed bears the burden of establishing subject-matter jurisdiction.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992).  In reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss under Rule 12(b)(6), the court will accept the factual allegations in Ms. Ahmed's complaint as true and draw all reasonable inferences in her favor. *Id.*

### III.  DISCUSSION

Defendants raise myriad arguments for dismissal under Rule 12(b)(1) and (b)(6), including arguments about standing, nonreviewability, and failure to state a claim. *See generally* ECF No. 5. These arguments have been raised in scores of cases in this district, providing a wealth of persuasive authority for the court. *See, e.g.*, *Kahbasi v. Blinken*, No. 23-CV-1667, 2024 WL 3202222 (D.D.C. June 27, 2024); *Ameer v. Schofer*, No. 23-CV-3066, 2024 WL 2831464 (D.D.C. June 4, 2024); *Al-Gharawy v. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1 (D.D.C. 2022); *Shen v. Pompeo*, No. 20-CV-1263, 2021 WL 1246025 (D.D.C. Mar. 24, 2021).

#### A.  Standing

The court begins, as it must, with jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998). Article III of the Constitution limits the jurisdiction of federal courts to "actual cases or controversies," meaning that Ms. Ahmed "must establish that [she] ha[s] standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To satisfy the constitutional requirement of standing, Ms. Ahmed must show: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560-61).

Defendants contest two prongs of standing: injury in fact and redressability. ECF No. 5, at 5. First, they argue that Ms. Ahmed has not suffered a legally enforceable injury in fact, contending that her suit is based on a procedural injury that is not connected to any substantive harm, primarily because she does not have a right to enter the United States. *Id.* at 7-14. Courts in this district have consistently rejected this argument, concluding that a plaintiff suffers an injury in fact when an unreasonable delay in visa adjudication causes financial or other hardship, such as separation from family members. *See Pourabdollah v. Blinken*, No. 23-CV-1603, 2024 WL 474523 at *3 (D.D.C. Feb. 7, 2024) (finding that the plaintiff's "separation from his family in the United States" was a "concrete harm" (citing *Trump v. Hawaii*, 585 U.S. 667, 698 (2018))); *see, e.g.*, *Kahbasi*, 2024 WL 3202222, at *3; *Rashidian v. Garland*, No. 23-CV-1187, 2024 WL 1076810, at *4 (D.D.C. Mar. 8, 2024); *Khan v. Blome*, No. 22-CV-2422, 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022). The court sees no reason to depart from this conclusion. The harm Ms. Ahmed alleges is twofold, encompassing both the procedural harm from the prolonged delay in the processing of her application and the emotional harm from being unable to visit her family in the United States. ECF No. 1 ¶¶ 17-18, 25. Those are sufficiently concrete harms to make this "a real controversy with real impact on real persons." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 87 (2019) (Gorsuch, J., concurring in the judgment)).

Second, Defendants argue that Ms. Ahmed improperly named Secretary Blinken as a defendant and that he should be dismissed from the case because he is unable to provide the requested relief of visa adjudication. ECF No. 5, at 5-6. Whether construed as an argument about causation or redressability, the court concludes that Secretary Blinken is a properly named defendant.

"To demonstrate standing under Article III, a party must show injury in fact that was caused by the conduct of the defendants and that can be redressed by judicial relief." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1289 (D.C. Cir. 2007). Defendants correctly acknowledge that the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" ECF No. 5, at 5 (emphasis omitted) (quoting *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021)); *see Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999). But Ms. Ahmed does not seek to have her visa adjudication revised; rather, she seeks to have the adjudication completed. ECF No. 1 ¶ 39. As numerous courts in this district have acknowledged, decisions on the merits are distinct from decisions about timing. *See, e.g.*, *Al-Gharawy*, 617 F. Supp. 3d at 10. "[N]othing . . . precludes the Secretary [of State] . . . from directing consular officers 'to conclude . . . matter[s] presented to [them]' 'within a reasonable time.'" *Id.* (fifth, sixth, and seventh alterations in original) (quoting 5 U.S.C. § 555(b)). Because Secretary Blinken either does or could play a role in the pace of visa adjudications, an order from this court directing him to move more quickly would likely redress Ms. Ahmed's harms. *See Lujan*, 504 U.S. at 561.

Defendants additionally contend that "[Ms. Ahmed] offers nothing to suggest that compelling a further adjudication of the Visa Application now will result in anything but another refusal." ECF No. 5, at 14. However, Defendants again miss the mark. Ms. Ahmed seeks final adjudication of her visa application, which remains in "administrative processing." ECF No. 1 ¶ 5. An order by this court compelling adjudication of her visa—not "re-adjudication," but rather completion of the process—would remedy her injuries by freeing her from the interim "processing" stage. Accordingly, Ms. Ahmed's injuries are redressable.

### B. Consular Nonreviewability and Non-Discretionary Duty

Defendants next raise two non-standing threshold challenges: (1) that the doctrine of consular nonreviewability bars Ms. Ahmed's claims, ECF No. 5, at 14; and (2) that she fails to identify a discrete agency action that Defendants were obligated to, but did not, take, *id.* at 19. The court is unpersuaded.

First, Defendants argue that the doctrine of consular nonreviewability prevents this court from reaching the merits. *Id.* at 15. In the context of visa adjudications, consular nonreviewability "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest.*, 985 F.3d at 1024. "[A] long line of decisions from this Court have held that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision." *Al-Gharawy*, 617 F. Supp. 3d at 11. Ms. Ahmed's application remains in administrative processing. ECF No. 1 ¶ 26. Thus, the doctrine does not apply.

Second, Defendants contend that Ms. Ahmed has failed to meet the threshold statutory requirements to bring a mandamus claim—specifically, that there is "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists"—or a related claim of unreasonable delay under the APA. ECF No. 5, at 19 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)). Defendants argue that Ms. Ahmed cannot identify a non-discretionary duty to adjudicate her visa application. ECF No. 5, at 19-20.[3]

---

[3] While Defendants frame their argument in terms of "re-adjudicating," as explained above, a Section 221(g) refusal is not a final adjudication of a visa application.

7

Several courts in this district have concluded that there is a duty to complete adjudication of visa applications, explaining "that both the APA and State Department regulations create a clear duty to adjudicate visa applications within a reasonable time." *Rashidian*, 2024 WL 1076810, at *5; *see, e.g.*, *Kahbasi*, 2024 WL 3202222, at *5, *Ameer*, 2024 WL 2831464, at *4; *Akrayi v. Dep't of State*, No. 22-CV-1289, 2023 WL 2424600, at *2 (D.D.C. Mar. 9, 2023); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020). *But see Mukkavilli v. Jaddou*, No. 22-CV-2289, 2023 WL 4029344, at *7-12 (D.D.C. June 15, 2023), *aff'd on other grounds*, No. 23-5138, 2024 WL 1231346 (D.C. Cir. Mar. 22, 2024). This court agrees with the majority view. Issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations. *See Khazaei v. Blinken*, No. 23-CV-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (explaining that the APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)").[4]

---

[4] In a Notice of Supplemental Authority filed on July 29, 2024, ECF No. 10, Defendants note a recent decision from the U.S. Court of Appeals for the D.C. Circuit, *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), in which the Court held that the plaintiff, who sought adjudication of her visa application, had not shown a clear and indisputable right to relief or a discrete action that the federal defendant had failed to perform. *Id.* at *3. Defendants contend that *Karimova*'s "controlling holding . . . is dispositive of the claims in this case." ECF No. 24, at 1. Not so. *Karimova* is an unpublished opinion, and "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." D.C. Cir. R. 36(e)(2). This court has considered *Karimova* but declines to follow it.

### C.  Unreasonable Delay

On the merits, Defendants argue that Ms. Ahmed has failed to state a claim for unreasonable delay on which relief can be granted. ECF No. 5, at 25. Ms. Ahmed's claims under the APA and the Mandamus Act share the same standards for obtaining relief. *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*")). Unreasonable delay is analyzed using the six "*TRAC*" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Am. Hosp. Ass'n*, 812 F.3d at 189 (quoting *TRAC*, 750 F.2d at 80). While not "ironclad," the *TRAC* factors provide "useful guidance in assessing claims of agency delay." *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). However, "[e]ach case must be analyzed according to its own unique circumstances," because each "will present its own slightly different set of factors to consider." *Air Line Pilots Ass'n v. Civ. Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984). The first and fourth factors are most important in the visa context. *Da Costa v.*

9

*Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023).  Weighing the *TRAC* factors here, the court concludes that Ms. Ahmed has plausibly alleged a claim of unreasonable delay.[5]

The first two factors—requiring agencies to follow "a rule of reason" that justifies their timeline and consider any congressionally imposed timelines—are typically analyzed together. *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).  In essence, these two factors require the court to consider "whether 'there [is] any rhyme or reason—congressionally prescribed or otherwise—for [the] agency's delay.'"  *Rashidian*, 2024 WL 1076810, at *6 (alterations in original) (quoting *Khazaei*, 2023 WL 6065095, at *6).  In analyzing these factors, the court may consider the "complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."  *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102).

In her complaint, Ms. Ahmed suggests that the five-year delay in the adjudication of her application is "in clear contradiction of Congressional intent, inasmuch as the [INA] states that Congress intended all nonimmigrant visa matters to be resolved within 30 days."  ECF No. 1 ¶ 28 (citing 8 U.S.C. § 1571(b)).  The relevant section of the INA provides:

> It is the sense of the Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition.

---

[5] Ms. Ahmed suggests that application of the *TRAC* factors is premature at the motion-to-dismiss stage.  ECF No. 8, at 17-18.  The court is unpersuaded, as courts routinely consider the *TRAC* factors when considering a motion to dismiss.  *See, e.g.*, *Rostamnia v. Blinken*, No. 23-CV-1638, 2024 WL 1328462, at *5 (D.D.C. Mar. 28, 2024) (applying the *TRAC* factors in an unreasonable-delay analysis at the motion-to-dismiss stage); *Rashidi v. Dep't of State*, No. 23-CV-1569, 2023 WL 6460030, at *4 (D.D.C. Oct. 4, 2023) (same).

8 U.S.C. § 1571(b). However, this guidance is not binding, *see Da Costa*, 80 F.4th at 344 (describing Section 1571(b) as an "aspirational statement"), and therefore cannot be considered to set forth a congressionally imposed deadline.

"Absent a congressionally supplied yardstick [for an appropriate agency timeline], courts typically turn to case law as a guide" to determine whether a delay is unreasonable. *Sarlak v. Pompeo*, No. 20-CV-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). "No bright lines have been drawn in this context, but '[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.'" *Arab*, 600 F. Supp. 3d at 70 (alteration in original) (quoting *Sarlak*, 2020 WL 3082018, at *6). However, "the reasonableness of a delay 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful,'" but rather by the facts of the present case. *Jingjing Liu v. Mayorkas*, No 20-CV-654, 2021 WL 2115209 at *5 (D.D.C. May 25, 2021) (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102). Importantly, regardless of the amount of time that a plaintiff has waited, "[a] delay in adjudication caused by the agency's failure to follow any rule of reason is, almost tautologically, unreasonable." *Id.* at *3 (denying a motion to dismiss where the plaintiff had waited only two years for a visa decision in part because of the defendants' failure to show that they had followed a "rule of reason"). The court finds that at this stage, Ms. Ahmed has alleged sufficient facts to suggest that Defendants' delay of over five years in reviewing her application is not governed by a rule of reason and is therefore unreasonable.

The court first notes that the delay experienced by Ms. Ahmed falls within the range that the court in *Arab* noted is "generally . . . unreasonable." 600 F. Supp. 3d at 70 (quoting *Sarlak*, 2020 WL 3082018, at *6). At the time Ms. Ahmed filed her complaint, she had waited almost five

years after her interview with the consular officer with no update on the "administrative processing" of her application. *See* ECF No. 1 ¶ 2. That delay is now five-and-a-half years. That alone may be a sufficient basis to deny Defendants' motion to dismiss. But even if the court does not treat a delay of this length as presumptively unreasonable, the court is not satisfied in this case that Defendants have utilized a rule of reason—a failure that is "almost tautologically[] unreasonable." *Jingjing Liu*, 2021 WL 2115209, at *3.

In examining the "complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency," *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102), as it must, the court is unable to discern a rule of reason that might justify Defendants' delay. Ms. Ahmed seeks a B1/B2 visa to visit—not to permanently reside or work in—the United States. ECF No. 1 ¶ 24. The temporary nature of Ms. Ahmed's desired visa, combined with the fact that she and her husband have both previously received visas without issue, supports her claim that a rule of reason is not being followed in this case. *Id.* ¶ 30. Ms. Ahmed also alleges, and the court accepts as true, that there is no "processing queue," *id.* ¶ 34, that might add an appearance of reason to Defendants' delay.[6] In response to Ms. Ahmed's allegations, Defendants do not provide any specific reasoning for their delay;

---

[6] Ms. Ahmed includes a declaration from a State Department official detailing the security vetting process for cases refused under Section 221(g). ECF No. 7-1. However, the court will not consider this exhibit at this stage. When ruling on a motion to dismiss, the court may only consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (alteration in original) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)). "If the district court considers other facts, it must convert the motion to dismiss into a motion for summary judgment and 'provide the parties with notice and an opportunity to present evidence in support of their respective positions.'" *Id.* (quoting *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011)). "The decision to convert a motion to dismiss into a motion for summary [judgment] . . . is committed to the sound discretion of the trial court." *Flynn v. Tiede-Zoeller, Inc.*, 412 F. Supp. 2d 46, 50 (D.D.C. 2006).

instead, they gesture broadly to agency discretion over "allocation of consular services." ECF No. 5, at 28. While it is true that agencies possess "wide discretion" in immigration matters, Defendants must still indicate that they follow a rule of reason to counterbalance Ms. Ahmed's allegations to the contrary. *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017). Agency discretion is not absolute, and a more developed record is necessary to determine whether the delay here is governed by a rule of reason. Therefore, for the purposes of the motion to dismiss, this factor weighs in Ms. Ahmed's favor.[7]

The fourth *TRAC* factor, which is "the effect of expediting delayed action on agency activities of a higher or competing priority," is also particularly important in the visa context. *Da Costa*, 80 F.4th at 343 (quoting *TRAC*, 750 F.2d at 80). The D.C. Circuit has refused to grant relief "where 'a judicial order putting [the petitioner] at the head of the queue [would] simply move[] all others back one space and produce[] no net gain.'" *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100 (alterations in original) (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). At this stage, Ms. Ahmed has sufficiently alleged that this would not be the case if the court were to order Defendants to render a decision on her application.

In her complaint, Ms. Ahmed states that she has "information and a well-founded belief that . . . a processing queue does not exist[], as evinced by numerous cases filed after and approved before Plaintiff's." ECF No. 1 ¶ 34. In response, Defendants state that they "ha[ve] never

---

[7] Defendants' reliance on *Da Costa* is misplaced. First, the four-year delay at issue in that case was within the timeframe courts generally hold to be reasonable, *Arab*, 600 F. Supp. 3d at 70, while Ms. Ahmed has experienced a significantly longer delay. Next, *DaCosta* concerned an application for permanent residence—a determination for which the "complexity [and] the significance (and permanence) of the outcome" require significantly more agency resources than the visa Ms. Ahmed seeks. 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102). Finally, the *DaCosta* Court held that the plaintiff had not plausibly alleged facts to suggest that the U.S. Customs and Immigration Service was not employing a rule of reason, *id.* at 340-41, while Ms. Ahmed has cleared that bar here.

13

maintained . . . that there exists a true 'queue,'" but that "prioritizing [Ms. Ahmed]'s visa request[] would come at a detriment of other noncitizens in a similar situation." ECF No. 8, at 4. Given Defendants' admission that there is no "true" queue, it is difficult for the court to see how Defendants can maintain their argument that "prioritizing the adjudication of Plaintiff's visa requests would displace others and place them ahead of others waiting for adjudication of their applications or consular services generally." *Id.* Therefore, at this stage, Defendants have not offered the court any reason to believe that adjudicating Ms. Ahmed's application would have an actual effect "on agency activities of a higher or competing priority." *Da Costa*, 80 F.4th at 343 (quoting *TRAC*, 750 F.2d at 80). Thus, the fourth factor also weighs in Ms. Ahmed's favor.

The third and fifth factors concern the impacts of the delay on the plaintiff. The third factor identifies "whether 'human health and welfare are at stake'—in which case judicial intervention is more justified—and the fifth assesses the 'nature and extent of the interests prejudiced by delay.'" *Milligan*, 502 F. Supp. 3d at 319 (quoting *TRAC*, 750 F.2d at 80). While Ms. Ahmed does not allege harms to her health, she does allege real human costs, including "severe distress and emotional harm" due to her prolonged inability to visit her daughter, son-in-law, and grandchild. ECF No. 1 ¶ 29. Separation from loved ones is an "undeniably significant" interest in immigration cases. *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (finding that the third and fifth factors weighed in the plaintiffs' favor because of the "prolonged and indefinite separation" of spouses). These factors weigh in Ms. Ahmed's favor.

Finally, the sixth *TRAC* factor concerns "whether the agency's bad faith caused the delay." *Sawahreh v. Dep't of State*, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). Ms. Ahmed does not allege that Defendants have acted with impropriety. ECF No. 7, at 19 n.5. However, "[a]s *TRAC* directs . . . the lack of plausible allegations of impropriety does not weigh against [Plaintiff]."

*Fakhimi v. Dep't of State*, No. 23-CV-1127, 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023). Thus, this factor is neutral in Ms. Ahmed's case.

After weighing the *TRAC* factors, the court concludes that Ms. Ahmed has plausibly alleged that Defendants' delay in adjudicating her visa is unreasonable. In light of Defendants' failure to persuasively argue that a rule of reason governs the process or that an order requiring the adjudication of Ms. Ahmed's application would have a negative effect on competing agency priorities, this case "is certainly worthy of further factual development." *Ashtari v. Pompeo*, 496 F. Supp. 3d 462, 470-71 (D.D.C. 2020) (denying a motion to dismiss "without wading into case-by-case comparison" because the plaintiff had plausibly alleged that a two-year delay was unreasonable); *Al-Gharawy*, 617 F. Supp. 3d at 18 (denying a motion to dismiss because the court lacked sufficient evidence that an eight-year delay was governed by a rule of reason or that judicial intervention would reorder a queue of applicants); *Jingjing Liu*, 2021 WL 2115209, at *5 (denying a motion to dismiss because the plaintiff "has a plausible claim for relief based on all the circumstances the Court may consider at the pleading stage, not merely because he has been waiting for over two years"). Defendants might well prevail after discovery, but they are not entitled to dismissal at this stage.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' motion to dismiss, ECF No. 5, is **DENIED**. It is further **ORDERED** that Defendants shall file an answer to Plaintiff's complaint on or before December 11, 2024.

**SO ORDERED.**

15

 

                                                          _____

                                                          LOREN L. ALIKHAN
                                                          United States District Judge

Date:   November 27, 2024